UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTERS FOR LIVING, INC. a California corporation; CENTERS VETERANS GROUP, LLC, a California limited liability company: WAYNE K. BURKS and KAY E. BURKS, as Trustees of the WAYNE K. and KAY E. BURKS LIVING TRUST dated February 11,1993; and WAYNE K. BURKS and EULA B. BURKS, as Trustees of the BARRY K. BURKS IRREVOCABLE TRUST dated September 30, 1988,<br><br>        Plaintiffs,<br><br>   v.<br><br>NATIONWIDE MUTUTAL INSURANCE CO[1]., and DOES 1 through 10, inclusive.<br><br>        Defendants. | Case No. 1:22-cv-00372-EPG<br><br>ORDER GRANTINGS DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF NOS. 11) |

In this civil action filed on March 29, 2022, Plaintiffs Centers for Living ("CFL"); Centers Veterans Group, LLC ("CVG"); and Wayne K. Burks and Kay E Burks, and Wayne K. Burks and Eula B. Burks, Trustees of the Wayke K. Burks and Kay E Burks Living Trust and Trustees of the Barry K. Burks Irrevocable Trust, respectively ("Burks' trusts") assert a claim for breach of contract against Defendant Nationwide Mutual Insurance, Co., ("Defendant") for failing to pay damages from a fire to a property. (ECF No. 1-2 at 8).

---

[1] Throughout its filings, Defendant refers to itself as Scottsdale Insurance Company. For uniformity, the Court will reference Defendant as indicated on the docket and "Defendant" throughout.

Before the Court is Defendant's Motion for Summary Judgment filed on June 19, 2023. (ECF No. 11).[2] Defendant argues that the undisputed facts show that Plaintiff CFL misrepresented material facts on its application for insurance for the property that was destroyed by a fire and thus that Defendant was entitled to rescind the insurance policy previously issued to Plaintiff CFL. (ECF No. 11-1 at 6).

For the reasons set forth below, the Court shall grant Defendant's motion.

## I.      DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A.  Defendant's Motion

In its motion for summary judgment, (ECF No. 11), Defendant argues that the undisputed facts establish that Defendant was legally entitled to rescind the insurance policy, and refuse to pay damages, because Plaintiff made material misrepresentations of fact in its application for insurance.

Defendant issued a policy for insurance covering Plaintiff's property based on an application completed by Plaintiff CFL's CFO John Coyle ("Coyle").  That application included a Commercial Insurance Application and a Halfway House General Liability Application. (*Id.* at 9). The Commercial Insurance Application included a section stating "ENTER ALLCLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS."  Coyle did not disclose any losses in response.  Another question on the application asked "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?"  Plaintiff responded "N," for no.

Defendant argues that the undisputed facts show that these responses were false. Contrary to this disclosure, there had been "repeated break-ins, vandalisms graffiti, thefts of business personal property and destruction of various appliances and interior finishes within the Subject Property," and police had been contacted several times to remove individuals from the

---

[2] The case was reassigned to the undersigned for all purposes on October 23, 2025. (ECF No. 23).

property.  (ECF No. 11-1 at 5).

Defendant argues that the misrepresentations of facts were material, entitling Defendant was to rescind the policy.[3] (*Id.* at 5).

### B.  Plaintiff's Opposition[4]

In opposition to Defendant's motion for summary judgment, Plaintiffs concede that the property had repeated break-ins, stating:

> John Coyle, who operates CFL, would make weekly inspections to make sure the premises were secure and to handle any issues with squatters, if needed. At times, Coyle needed to force people to vacate who had entered by either breaking locks or moving the air conditioner and coming in through the ceiling. On two occasions, Coyle requested that the Fresno Police go with him because he had reason to suspect gang or other dangerous activity. In other words, police assistance was sought as a preventative measure to avoid harm, and not because of suspicion that a crime was occurring.

> During these instances, the vagrants broke some of the personal property stored there, confiscated a few minor used items that had been donated to CFL, and sprayed graffiti on the walls. At one point, vagrants chained the doors shut. However, this was easily remedied by cutting the chains.

(ECF No. 13, at p. 7).  Nevertheless, Plaintiff argues that there is a dispute of fact as to whether Defendant was entitled to rescind the policy based on Plaintiff's failure to disclose these events.

First, Plaintiffs argue that the applications were vague and did not necessarily require disclosure of information about the past incidents.  Regarding the question regarding "claims or losses . . . or occurrences that may give rise to claims," Plaintiffs argue that the questions "could be interpreted to be asking for facts relating to possible future insurance claims." (*Id.*). Under this interpretation, Plaintiff "did not see any possibility of a future insurance claim on any past acts, Plaintiffs properly and honestly answered the questions posited" (*Id.*).

Plaintiffs also argue that question regarding whether or not any crimes have occurred or been attempted on the premises was also vague and ambiguous. (*Id.* at 12-13). Plaintiffs argue that while Coyle sought the assistance of police on two different occasions, this assistance was

---

[3] Defendant also argues that the policy only covered CFL and not the other Plaintiffs in the case. (ECF No. 11-1 at 6-7).

[4] The Court notes that Plaintiff's opposition was not timely filed in violation of Local Rule 230 (c). However, the Court has nevertheless considered Plaintiff's opposition.

for protection purposes and not to stop a crime. Moreover, no individual was charged with a crime, nor was a police report made. As such, Coyle did not believe these activities were crimes that needed to be disclosed. (*Id.*).

Second, Plaintiffs argue that a question of fact exists regarding whether the undisclosed information was material. Plaintiffs claim that Defendant was generally aware that the Subject Property was in an area with an elevated crime rate. Defendant was also aware that Plaintiff planned to renovate and remodel the property. Plaintiffs thus argue that Defendant would have issued the policy even if the information had been disclosed, and thus any misrepresentations were not sufficiently material to entitle Defendant to rescind the policy.

## C. Defendant's Reply

In Defendant's reply to Plaintiff's opposition, Defendant reiterate that Coyle "actively and intentionally concealed [information] from Scottsdale despite its repeated inquiries in various sections of the insurance applications." (ECF No. 14 at 5). Further, Defendants argue that during his deposition and recorded statement, Coyle repeatedly stated he did not disclose the information of vandalism and break-ins at the Subject Property because he did not believe it was material. (*Id.*). Defendants argue this testimony contradicts Plaintiffs' argument in the opposition papers that Coyle did not understand the past incidents to qualify as crimes. (*Id.*).

## II.    LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Zetwick v. County. of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) ("Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record . . . from which a reasonable inference . . . may be drawn;" the court need not entertain inferences that are unsupported by fact. *Celotex*, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed." *Anderson*, 477 U.S. at 255.

**B. Legal Standards Regarding Interpretation of Contract**

California Insurance Code §§ 330, 331, 332, 334 and 359 permit the recission of an insurance policy premised upon the insured's failure to disclose a material fact in the application for insurance. Specifically, California Insurance Code §331 provides that "concealment, whether intentional or unintentional, entitles the inured party to rescind insurance." California Insurance Code §330 defines concealment as "Neglect to communicate that which a party knows, and ought to communicate, is concealment." Moreover, California Insurance Code §359 states that "If a representation is false in a material point, whether

affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

Regarding materiality, California Insurance Code § 334 provides that: "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." Furthermore, the Supreme Court of California has provided the following guidance regarding materiality in the context of rescission of an insurance contract:

> Materiality is determined solely by the probable and reasonable effect which truthful answers would have had upon the insurer. (Ins.Code, s 334; *Burns, supra*, 201 Cal.App., p. 871, 20 Cal.Rptr. 535.) The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law. (*Cohen, supra*, 48 Cal.2d, p. 726, 312 P.2d 241*; Cal.West States etc. Co., supra*, 15 Cal.2d, p. 423, 101 P.2d 696; but see *Ransom v. Penn. Mutual Life Ins. Co., supra,* 43 Cal.2d 420, 427, 274 P.2d 633.)

> On the other hand, if the applicant for insurance had no present knowledge of the facts sought, or failed to appreciate the significance of information related to him, his incorrect or incomplete responses would not constitute grounds for recission. . . . Finally, as the misrepresentation must be a material one, 'An incorrect answer on an insurance application does not give rise to the defense of fraud where the true facts, if known, would not have made the contract less desirable to the insurer. (Citations.' (*Ransom, supra,* 43 Cal.2d p. 427, 274 P.2d p. 637, see *Burns v. Prudential Ins. Co., supra,* 201 Cal.App.2d 868, 872, 20 Cal.Rptr. 535.) And the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed.

*Thompson v. Occidental Life Ins. Co.,* 9 Cal.3d 904, 916 (1973). However, an insurance company may not claim reliance on a materially misrepresented fact when the representation was in fact true and was provided in response to an ambiguous question, as ambiguities in a contract shall be construed against the insurer. *Duarte v. Pacific Specialty Ins. Co.* 13 Cal.App.5th 45, 54 (2017). "Insurance policies are to be construed most strongly against the insurer, and doubtful language is to be resolved against it … If the insurer uses language which

is uncertain, any reasonable doubt will be resolved against it." *Holz Rubber Co., Inc. v. American Star Ins.* Co (1975) 14 Cal.3d 45, 59.  "An insurance policy provision is ambiguous when it is capable of two or more constructions both of which are *reasonable.*". *Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Insurance Co*. 5 Cal.4th 854,867 (1993).

**III.    UINDISPUTED FACTS**

Based on the evidence submitted, the Court finds that following facts are undisputed:

In July 2020, Plaintiff CFL purchased a property located at 4313 E. Tulare Street, Fresno, CA 93702, ("Subject Property"). The property was occupied by CFL until late October 2020. (ECF No. 11-1 at 7; ECF No. 12 at 7).

During the months of November and December 2020, the property was vacated. (*Id.*). During this time, there were repeated break-ins, resulting in vandalism, graffiti, destruction and damage to the physical structure as well as theft and damage to business personal property stored at the Subject Property. (ECF No.11-1 at 7). John Coyle, the operator of CFL, would make weekly inspections at the Subject Property and at times would need to force people to vacate the property who had entered by either "breaking locks or moving the air conditioner and coming in through the ceiling." (ECF No. 12 at 7). Coyle requested Fresno Police to accompany him to the property on two separate occasions. (ECF No. 13 at 7).

On or about December 18, 2020, CFL submitted an application for insurance on the subject property to Defendant, which was completed and signed by Coyle. (*Id.* at 8).

On page 4 of the Commercial Insurance Application, it stated "ENTER ALL CLAIMS OR LOSSES (REGALRDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURENCES THAT MAY GIVE RISE TO CLAIMS." (ECF No. 13 at 9). Coyle left the response blank.

On Page 4 of the Commercial General Liability section of the application, question 18 asks, "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS." (*Id.*)  Coyle answered no to this question.

Finally, Question 41 of the Halfway House General Liability Application, requested all claims or losses (regardless of fault and whether or not insured) or occurrences that may give

rise to claims for the prior five years." This section was left blank, but a "No Loss" letter printed on CFL letterhead and signed by Coyle was submitted indicating

> that "[Subject Property] [has] had no losses claims, accidents or knowledge of any pending or potential reason that could give rise a claim due to our operations, or any affiliates acting under or for *our* operations, during the period of 12/21/2017 - 12/21/2020"

(ECF No. 11-1 at 15).

Based on the applications, Defendant issued an insurance policy that covered the Subject Property. (ECF No. 12 at 8).

On December 22, 2020, a fire was started at the Subject Property, and the entire structure was burned to the ground. (ECF No. 11-1; ECF No. 13 at 10) When CFL submitted a claim to Defendant for damages, Plaintiff was informed by Defendant that the insurance policy had been rescinded. (*Id.* at 10).

## IV.    ANALYSIS

The Court finds that, based on the evidence submitted, there is no genuine dispute of fact that the application for insurance covering the property contained at least one representation that was false in a material point, and thus that Defendant's rescission of the policy was proper under California law.

Again, the insurance policy at issue asked Plaintiff "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?" Plaintiff responded no.[5]

The Court finds that undisputed evidence establishes that this representation was false. Even according to Plaintiffs, within the relevant time period, "Coyle needed to force people to vacate who had entered by either breaking locks or moving the air conditioner and coming in through the ceiling. On two occasions, Coyle requested that the Fresno Police go with him because he had reason to suspect gang or other dangerous activity. . . . During these instances, the vagrants broke some of the personal property stored there, confiscated a few minor used

---

[5] Because the Court finds that this misrepresentation entitled Defendant to rescind the policy, it does not address other potential misrepresentations raised in Defendant's motion.

items that had been donated to CFL, and sprayed graffiti on the walls. At one point, vagrants chained the doors shut." (ECF No. 13, at p. 7).

Furthermore, on February 27, 2023, Coyle stated during an interview by an underwriter employed by Defendant that squatters were an issue during the vacant period from late October 2020 to December 2020. (ECF No. 11-4 at 17). Coyle stated police were called twice to accompany him and vagrants were encountered in the building. Coyle stated that individuals gained accessed to the building and "kept changing the locks on us." (*Id.* at 18). Coyle stated theft was an issue. (*Id.*). Coyle was asked if there was vandalism that occurred, and he stated that there was. (*Id.*). Coyle stated that there was about "thirty thousand" in loss "due to vandalism . . and theft." (ECF No. 11-4, at p. 21-22

Also on February 27, 2023, Dawn McCollum ("McCollum"), CFL's CFO was interviewed by Defendant's counsel John Delamora. (ECF No. 11-4, at p. 29 et seq.) McCollum stated there was "a decent amount of vandalism" between November and December, before the fire. (*Id.* at 30). McCollum also stated that Plaintiffs "called the police . . . two times, maybe three." (*Id.*).

These events clearly qualify as crimes that occurred or had been attempted on the premises within the last 3 years. *See, e.g.*, CA Pen. Code, § 459 ("Every person who enters any house, . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not."); CA Pen. Code, § 484 ("(a) Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, . . . is guilty of theft."); CA Pen. Code, § 594 (a) ("Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism: (1) Defaces with graffiti or other inscribed material.").

In its opposition, Plaintiff argues that the past incidents were not responsive to the question, because "the broad and vague question quoted above presumes that the answering party is aware of all activities that constitute a crime. The California Penal Code is an extensive volume comprised of approximately 34,370 sections related to criminal activity. It is absurd to

think that any lay person would be sufficiently familiar with it to understand all activities that comprise a crime." (ECF No. 13, at p. 13).  The Court finds this argument unconvincing.  It does not take a detailed understanding of the penal code to know that the activities at issue, including breaking locks to enter private property, stealing personal property, and vandalism constitute crimes.  Moreover, Coyle's activities confirm that he was aware that they were crimes.  At least twice he reported these activities to the Fresno Police Department, which is what someone does to report criminal activity.

The Court has also evaluated whether the undisputed facts establish that the misrepresentation was false in a material point.  Again, California Insurance Code § 334 provides that:  "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries."

In support of its motion, Defendant has submitted the declaration of John Vick, an underwriter of Scottsdale, in which he states that the Loss History of an applicant is critical in the determination of whether or not to accept a property. (ECF No. 11-1 at 15). The undisclosed and unrepaired damage as well as the ongoing and continuous break-ins of the Subject Property were an unacceptable risk and had "[Defendant] been provided with an accurate accounting of the nature and extent of the losses it would have rejected the application and never issued the policy." (*Id.*).  Defendant argues that this establishes materiality under California law because it would have affected Defendant's determination of the advantages of the proposed contract.  *See Casey By & Through Casey v. Old Line Life Ins. Co. o/Am.*, 996 F.Supp. 939, 948 (N.D. Cal. 1998) ("materiality is determined by the probable and reasonable effect that truthful disclosure would have had on the insurer in determining the advantages of the proposed contract."). Defendant also argues that the declaration of its underwriter is sufficient to establish materiality, citing to the California Appellate *Imperial Casualty & Indemnity Co. v. Sogomonian* 198 Cal.App.3d 169, 182 (1988), which held that summary judgment in favor of the insurer was proper because:

> It is supported by the nature of the insurance coverage which defendant sought, the quality and quantity of the information which was not disclosed and the fact

> that Imperial specifically requested the information on its application and thereafter relied upon it in issuing the policy. The uncontradicted evidence of Imperial's underwriter confirms the importance which Imperial attached to the information. Under these circumstances, the materiality of defendants' concealment is established as a matter of law.

*Id.* at 182.

In its opposition, Plaintiffs argue that the misrepresentation was not material because it is disputed whether Defendant would have entered into the contract if it had known the information.  In support, Plaintiffs state that "an incorrect answer on an insurance application does not alone provide a defense to the insurer where, if known, the insurer would nevertheless have made the contract."  (ECF No. 13, at p. 14).  However, this is not a correct summary of the rule regarding materiality.  The case that Plaintiffs for this proposition actual states: "It is acknowledged that an incorrect answer on an insurance application does not alone give rise to the defense of fraud where the true facts, if known, *would not have made the contract less desirable to the insurer*."  *Clarendon Nat. Ins. Co. v. Insurance Co. of the West* 442 F.Supp.2d 914, 935 (E.D. Cal. 2006), *aff'd sub nom. Clarendon Nat. Ins. Co. v. H & G Transport, Inc.,* 290 Fed.Appx. 62 (9th Cir. 2008) (emphasis added).  *See also id.* at 935 ("Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, *in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries*. Cal. Ins.Code § 334. The question is whether or not the matter misstated or concealed could reasonably be considered in affecting the insurer's decision as to whether or not to enter into the contract, *in estimating the degree or character of the risk, or in fixing the premium*.") (emphasis added).  Thus, Defendant need not show that it would not have entered into the contract if it had known of the true facts.  It need only show that the information would have made the contract less desirable and would have changed Defendant's estimation of the risk involved or fixing of the premium.

Furthermore, the only evidence before the Court of the effect this information would have had on Defendant is the declaration of Defendant's underwriter, discussed above, which states that "[a]ll of the misrepresentations set forth above would have been material to our

decision to undertake such a risk and the underwriting guidelines prohibit Scottsdale from insuring such a property with these types of issues." (ECF No. 11-3 at 5). In its opposition, Plaintiffs argue that the misrepresentation was inconsequential because the policy covered 6 different buildings, Defendant was aware that the property would be used as a halfway house, and Defendant was aware that the property was in a more crime-ridden area. (ECF No. 13, at p. 15). Plaintiffs also argue that Plaintiffs representations had a discussion with Michael Todd, an agent affiliated with Pacific Ag Ins. Agency, and that "Mr. Todd was well aware of the crime levels at the location of the Subject Property," and that "the Subject Property was to be used as a halfway house in a part of the city of Fresno that was more subject to crime than the other residential neighborhoods where the other properties were located." (ECF No. 13 at 10) (emphasis added). However, Plaintiffs do not offer any evidence in support of their argument, such as a declaration or deposition testimony. Moreover, Mr. Todd is not a Defendant in this action and Defendant claims he is not affiliated with Defendant's agency. (ECF No. 14 at 11). Even so, general knowledge that Plaintiffs' property is an area more subject to crime than other areas is far different than knowing that this property has suffered from repeated break-ins, theft, and vandalisms.

The Court also finds the case of *Nieto v. Blue Shield of California Life & Health Ins. Co.* 181 Cal.App.4th 60, 77–78 (2010) persuasive on this issue, where it held that the insurer was entitled to summary judgment, and addressed the issue of materiality as follows:

> In support of summary judgment, Blue Shield offered Krebs's declaration that she would not have approved appellant for coverage had she known about appellant's medical history, as well as the declarations of senior underwriter Paula Wells who averred: "According to Blue Shield Life's underwriting guidelines, the medical conditions reflected in [appellant's] medical and pharmacy records, if disclosed on her Application, would have rendered [appellant] ineligible for enrollment in any Blue Shield Life IFP product." Although "the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed" (*Imperial Casualty & Indemnity Co. v. Sogomonian, supra,* at p. 181, 243 Cal.Rptr. 639), Blue Shield's declarations satisfied the elements of section 334. Moreover, those declarations constituted the only evidence on the point; appellant offered no evidence to raise a triable issue of fact as to materiality.

*Id.* at 77-78.

Here, the undisputed evidence establishes that the omitted information about criminal

activity on the property would have probably and reasonably influenced Defendant's estimate of the degree or character of the risk or the fixing of the premium.  The representation was thus false in a material point, and Defendant was entitled to rescind the contract.

**V.     CONCLUSION**

For the foregoing reasons, the Court finds that there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

Accordingly, based on the foregoing, **IT IS HEREBY ORDERED THAT**

1.   Defendants' Motion for Summary Judgment be **GRANTED**; and

2.   The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

Dated:    **January 29, 2026**              /s/ _Erica P. Grosjean_
                                    UNITED STATES MAGISTRATE JUDGE